UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

Present: The Honorable   Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   **Order GRANTING the motion for final approval of class and collective action settlement and GRANTING the motion for attorneys' fees, costs, and enhancements.**

Before the Court are two motions.  The first is a motion for final approval of class and collective action settlement filed by Plaintiffs Jose Alvarez ("Alvarez"), Ethel Herrera ("Herrera"), Chad Shoemaker ("Shoemaker"), Leo Tapia ("Tapia"), and Kareem Davis ("Davis") (collectively, "Plaintiffs").  *See generally* Dkt. # 97-1 ("*FA Mot.*").  Defendant City of Oxnard ("Defendant") did not oppose.  The second is Plaintiffs' unopposed motion for attorneys' fees, expenses, and service awards.  *See generally* Dkt. # 98-1 ("*Fees Mot.*").  Having considered the moving papers, and having held a hearing on March 17, 2023, the Court **GRANTS** the motion for final approval and **GRANTS** the motion for attorneys' fees, expenses, and service awards.

I.   <u>Background</u>

A.   <u>Factual and Procedural Background</u>

This case stems from an employment dispute.  *See FA Mot.* 3:3–5.  Plaintiffs worked for various divisions of Defendant's Public Works department.  *Id.* at 3:9–11.  As part of their employment, Plaintiffs were sometimes required to work "controlled" standby shifts and "uncontrolled" standby shifts.  *Id.* at 3:15–21.  Controlled standby shifts required an employee to be reachable by phone and to report to work within 30 minutes of being called in.  *Id.* Uncontrolled standby shifts similarly required an employee to be on call but with no obligation to report to work within 30 minutes.  *Id.*  Per the contractual Memorandum of Understanding ("MOU") between Defendant and its employees, the pay rate for controlled standby shifts was minimum wage, while the uncontrolled standby pay rate was $1.25 an hour.  *Id.*  Plaintiffs,

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

however, allege that Defendant "failed to pay [its employees] the full amount of contractual controlled standby wages" and instead paid them at the uncontrolled standby rate even when employees worked controlled standby shifts. *See First Amended Complaint*, Dkt. # 27 ("*FAC*"), ¶¶ 50–59.

Plaintiffs filed suit against Defendant in state court, which was removed to this Court on September 17, 2019. *See generally* Dkt. # 1. The operative complaint alleges the following three causes of action:

First Cause of Action: Withholding Wages in Violation of California Labor Code § 222. *See FAC* ¶¶ 40–45.

Second Cause of Action: Failure to Pay Wages Under the Fair Labor Standards Act ("FLSA"). *See id.* ¶¶ 46-52.

Third Cause of Action: Breach of Contract. *See id.* ¶¶ 53-59.

Plaintiffs then moved for class and collective certification, which the Court granted on December 17, 2020. *See generally* Dkts. # 41, 42. About a year later, Defendant sought to dismiss Plaintiffs' California Labor Code § 222 claim, arguing that § 222 did not apply to a government entity. *See generally* Dkt. # 71. Because the § 222 claim raised a complex matter of first impression better suited for resolution by a California state court, the Court declined to exercise supplemental jurisdiction over the claim and remanded it to Ventura County Superior Court. *See generally* Dkt. # 80.

Then, following a private mediation session in December 2021, the parties reached an initial settlement of the class and collective claims, *see generally* Dkt. # 81, and Plaintiffs sought preliminary approval of the settlement, *see generally* Dkt. # 85. The Court, however, denied preliminary approval after identifying several issues with the settlement agreement and notices. *See generally* Dkt. # 89.

To cure the deficiencies identified by the Court, the parties conducted further negotiations and finalized an amended settlement agreement, *see Declaration of Jason Hatcher in Support of Renewed Preliminary Approval Motion*, Dkt. # 90-2, ¶ 7; *see also Amended Joint Stipulation of Class and Collective Action Settlement and Release*, Dkt. #90-3 ("*Settlement*"). On August 16, 2022, the Court preliminarily approved the Settlement. *See generally* Dkt. # 91 ("*Prelim. Approval Order*"). Plaintiffs now bring

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

their motion for final approval of the Class and Collective Settlement, and the Court held a fairness hearing on March 17, 2023. *See generally FA Mot.*

    **B.**    <u>Overview of the Settlement</u>

    The parties agreed to a $3.5 million gross settlement to resolve both the class and collective claims. *Settlement* ¶ 16. The Settlement Class includes:

> All current and former non-exempt employees of the City of Oxnard covered by the MOU between the City of Oxnard and the International Union of Operating Engineers, Local No. 501, AFL-CIO, for the period of August 5, 2015, through December 17, 2020 who worked standby.

*Id.* ¶ 3. The Settlement Collective consists of:

> All current and former non-exempt employees of Defendant covered by the MOU between Defendant and the International Union of Operating Engineers, Local No. 501 AFLCIO, for the period of August 5, 2016 through December 17, 2020, who were paid compensatory time off in lieu of overtime and/or were paid overtime in the same pay period as working contractual standby and who . . . opted-in to the Fair Labor Standards Act collective action[.]

*Id.* ¶ 14.

    The gross settlement amount includes an award of attorneys' fees and costs, service awards for each Class Representative, settlement administration fees, and Defendant's employer-side of payroll taxes. *Id.* ¶¶ 16, 20. After these deductions, the net settlement amount is $2,187.583.83, which will be divided into two funds—one for the Settlement Class and the other for the Settlement Collective. *See id.* ¶ 55; *FA Mot.* 7:6–10. Any unclaimed funds will be held by the California State Controller's Unclaimed Property Fund in the Settlement Class or Collective Member's name. *Settlement* ¶ 59.

    "Fund 1" for the Settlement Class will include 97% of the net settlement amount—about $2.12 million—and will be divided into two sets. *See id.* ¶ 55(a); *see also FA Mot.* 3:22–4:5, 7:23–25. Set One Claims, which are allocated 96% of Fund 1, are those that arose before November 2018 when Defendant allegedly began changing its expected report time from 30 to 60 minutes, such that the shifts were subject to uncontrolled standby pay rates. *See FA Mot.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

3:22–4:5, 8:5–10 (noting that Defendant implemented this change across its divisions between November 29, 2018, and January 22, 2019). Set Two Claims, which are allocated 4% of Fund 1, arose after November 2018. *See id.* 8:17–23. Both Set One and Set Two Claims will be distributed to Class Members on a pro rata basis depending on the number of standby hours worked. *See Settlement* ¶ 55(a); *FA Mot.* 7:23–9:4. Plaintiffs estimate that Settlement Class Members, on average, will receive roughly $12,195 each—or average payments of $18,188.19 for Set One Claims and $628.73 for Set Two Claims. *See FA Mot.* 1:18–2:5; 18:23–27.

"Fund 2" allocates 3% of the net settlement amount, or a little over $65,600, to Settlement Collective Members for an average settlement share of $745.77. *See Settlement* ¶ 55(b); *FA Mot.* 9:5–10:19. Collective Members' shares will be the sum of two pro rata share calculations. *Settlement* ¶ 55(b). The first one accounts for underpaid overtime hours in pay periods with standby hours, and the second calculation accounts for a flat fee plus underpaid compensatory time off in lieu of overtime pay. *See id.*

In exchange, Class and Collective Members agree to release Defendant of specified claims. *See id.* ¶¶ 61–62. Class Released Claims relate only to the Labor Code § 222 and breach of contract causes of action as pled in Plaintiffs' *FAC* and do not encompass any claims under the FLSA. *See id.* ¶ 37. Collective Released Claims, on the other hand, are tailored to the FLSA cause of action. *Id.* ¶ 15.

On December 2, 2022, ILYM Group ("ILYM") sent notice by U.S. Mail to all 285 individuals contained in the Class and Collective list. *Declaration of Nathalie Hernandez of ILYM Group, Inc.*, Dkt. # 97-3, ¶ 7 ("*Hernandez Decl.*"). After re-mailing returned notices to individuals with forwarding addresses and attempting a skip trace to find mailing addresses for individuals with undeliverable notices, ILYM was able to reach 100% of the 174 Class Members and over 98% of the 111 Collective Members. *See id.* ¶¶ 8–10, 14. As of February 15, 2023, ILYM has received 88 FLSA settlement claims forms/releases and only one dispute that has since been withdrawn, and no Class Member has opted out of or filed objections to the Settlement. *Id.* ¶¶ 12–13, 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

II.    Final Approval of Class and Collective Settlement

   A.    Analysis of Class Settlement

      i.    *Legal Standard*

A court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  Approval or rejection of a settlement agreement is committed to the district court's sound discretion.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

In determining whether a settlement is fair, reasonable, and adequate, courts must balance the following factors:

[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

*Id.* at 1026; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Just. v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").  Additionally, under Federal Rule of Civil Procedure 23(e), the Court must "scrutiniz[e] the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause.  *See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).

The district court must either wholly approve or reject the settlement after comprehensively exploring all factors.  *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").  The court may not delete, modify, or rewrite any provision of the settlement.  *See id.* A court should be cognizant that a settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

adequate and free from collusion." *Id.* The Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

        *ii.*   Hanlon *Factors*

        *a.*   *Strength of Plaintiff' Case*

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) (citation omitted). This factor generally weighs in favor of approval when plaintiffs must overcome barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Plaintiffs indicate that they had a strong case against Defendant, which is evinced by their ability to obtain a net settlement amount for the Class that represents roughly 67.8% of its reasonable expected recovery at trial. *See FA Mot.* 14:10–11, 18:11–14; *see also Prelim. Approval Order* at 7–8 (noting that the Settlement represents a significantly higher percentage of Plaintiffs' hoped-for recovery at trial than most wage and hour class actions). The strength of Plaintiffs' class claims was especially driven by Set One Claims—i.e., the claims that arose before November 2018. *See FA Mot.* 15:1–3. Plaintiffs used the testimony of several witnesses and payroll records to support the claim that Defendant paid only uncontrolled standby rates despite requiring a 30-minute response time. *See id.* 14:10–26. But as the Court previously recognized, "this matter largely entailed a 'witness-intensive,' factual dispute," which not only posed a risk of losing at trial but also provided a "lower margin for reversal [on appeal]." *Prelim. Approval Order* at 8. Plaintiffs also would have had to undergo the risks and ongoing expenses associated with litigating the Labor Code § 222 claim in state court. *See id.*; *see also FA Mot.* 16:7–8.

Given the risks of ongoing litigation and the significant recovery ultimately obtained on behalf of the Class, the Settlement is reasonable even if Plaintiffs had a strong liability case against Defendant. This factor therefore weighs in favor of final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

> b.    *Risk, Expense, Complexity, and Duration of Further Litigation*

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *See Officers for Just.*, 688 F.2d at 625.

Plaintiffs argue that, without a settlement, they would need to endure expensive and protracted litigation that could have resulted in no recovery at all for certain claims. *See FA Mot.* 10:7–11:16. For example, the class claims centered on a "factual dispute of whether or not the Settlement Class was expected to respond within 30 minutes while working standby hours." *See id.* 15:21–26. And Defendant may have had a complete defense to all claims that arose during the second half of the class period if it proved that it changed the standby response time from 30 to 60 minutes between November 2018 and January 2019. *See id.* 16:2–5. Further, had the parties not settled, Plaintiffs would have to continue litigating the Labor Code § 222 claim that hinges on an unresolved issue of whether it can apply to a government entity. *See id.* 16:7–8. The Settlement therefore eliminates the costs and uncertainty of further litigation, and thus this factor supports final approval. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing.").

> c.    *Risk of Maintaining Class Action Status Through Trial*

For many of the same reasons stated above, Plaintiffs recognize that resolution of the class claims would have likely required individualized inquiries and posed manageability concerns that could have threated class action status through trial. *See FA Mot.* 16:15–22. For example, Plaintiffs would have had to establish the credibility of a large number of witnesses and engage in fact-specific questioning regarding Defendant's policies and practices over an extended period of time and across different divisions. *See id.* 16:15–19. Accordingly, this factor also supports final approval.

> d.    *Amount Offered in Settlement*

The next factor in assessing the fairness of the proposed settlement is the amount of the settlement. "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Just.*, 688 F.2d at 624 (citation omitted). The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators." *Id.* at 625. Rather, the settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

The Settlement allots $2.12 million for the Settlement Class, which represents 67.8% of Defendant's reasonable principal damage exposure. *See FA Mot.* 15:1–11, 18:11–13. The Settlement apportions 96% of this amount, or $2,037,077.60, for Set One Claims, which represents 68.7% of Defendant's maximum principal damage exposure for those claims. *See id.* 18:14–16. And the remaining $84,878.23 allocated for Set Two Claims represents 52% of Defendant's reasonable principal damage exposure despite the "significantly lower perceived probability of prevailing" on these claims at trial. *See id.* 18:17–19, 20:1–5. Not only do these amounts represent a significantly higher recovery than what is obtained in most wage and hour class actions, *see Prelim. Approval Order* at 7–8 (citing cases in which courts approved settlements that were between 10% and 27% of the plaintiffs' expected recovery), they also adequately reflect the respective strengths and weaknesses of the two claims.

In sum, Plaintiffs were able to obtain a significant recovery for the Class. Weighing this against the clear risks of ongoing litigation, the amount offered is reasonable and favors final approval. *See Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *12 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members must "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"); *Vasquez*, 266 F.R.D. at 489 (noting that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" is a relevant factor).

*e.*     *Extent of Discovery Completed and Stage of the Proceedings*

This factor requires the Court to gauge whether Plaintiffs had sufficient information to make an informed decision about the merits of their case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases," and the more heavily this factor weighs in favor of final approval. *Young v. Polo Retail, LLC*, No. C 02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (citation omitted).

The Court is satisfied that the parties had a "clear view of strengths and weaknesses" before agreeing to settle. *See Young*, 2007 WL 951821, at *4. Specifically, the parties engaged in extensive discovery over multiple years, which included the review of over a thousand pages of documents and deposing multiple fact witnesses. *See FA Mot.* 21:25–27. Plaintiffs also successfully litigated motions for class and collective certification, opposed a motion for judgment on the pleadings, and engaged a wage-and-hour expert. *See id.* 22:1–6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

Further, the initial settlement agreement was reached only a few months before trial. Plaintiffs had thus begun making trial preparations at the time the parties entered private mediation in December 2021, which informed the settlement negotiations. *See id.* 21:25–22:11. And the final settlement agreement was reached after an additional two months of negotiations following the Court's order denying preliminary approval. *See id.*

The extensive formal discovery, mediation efforts, trial preparation, and prolonged negotiations support that Plaintiffs made an informed decision to settle. This factor therefore weighs heavily in favor of final approval.

### f.    Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). While counsel's views are instructive, they do not entitle the plaintiff to a presumption of fairness. *See Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

Class Counsel here have considerable experience handling wage and hour class and collective actions. *See, e.g.*, *Declaration of David Myers*, Dkt. # 97-8, ¶¶ 3–4 ("*Myers Decl.*"); *Hatcher Decl.* ¶¶ 2-4. Based on their experience, they opine that the Settlement provides "significant and appropriate value to the claims at-issue based on the strengths and risks of the class claims." *See FA Mot.* 22:17–19 (citing *Myers Decl.* ¶¶ 17, 19; *Hatcher Decl.* ¶¶ 5–6, 13). The Court recognizes that Class Counsel's extensive experience permitted them to evaluate the merits of the claims and risks associated with prosecuting them through trial and appeal. As such, the Court credits Class Counsel's determination that the settlement is fair and reasonable and finds that this factor leans, even if only slightly, in favor of final approval.

### g.    Presence of a Government Participant

This factor supports final approval because Defendant is a local government entity, who undeniably supports this Settlement as it did not oppose either of the preliminary approval motions or the final approval motion. *FA Mot.* 23:3–4; *accord Gonzalez-Tzita v. City of L.A.*, No. 16-0194 FMO (Ex), 2020 WL 11025945, at *5 (C.D. Cal. Aug. 25, 2020) ("The City is a local governmental entity that undoubtedly supports the settlement. Thus, this factors also supports approval.").

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

    *h.*    *Class Members' Reaction to the Proposed Settlement*

In evaluating the fairness, adequacy, and reasonableness of a settlement, courts also consider the reaction of the class to the settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *Arnold v. Fitflop USA, LLC*, No. CV 11-0973 W (KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

Notably, no Class Member objected to or opted out of the Settlement. *See Hernandez Decl.* ¶¶ 11–15, Exs. A–C. This creates s strong presumption that the Settlement is beneficial to the Class and thus warrants final approval. *See Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

    *i.*    *Balancing the* Hanlon *Factors*

Having considered each of the *Hanlon* factors, the Court finds that all relevant factors weigh in favor final approval.

    *iii.*    Briseño *Factors*

In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must look for signs that class counsel pursued their own self-interests in the negotiations. *See* 998 F.3d at 1023. The *Briseño* court identified three "red flags" that are indicative of collusion between class counsel and the defendant: (i) if class counsel receives a disproportionate distribution of the gross settlement amount; (ii) if any of the gross settlement amount reverts to the defendant; and (iii) if there is a "clear sailing arrangement." *See id.* The Court discusses each "red flag" in turn.

    *a.*    *Disproportionate Distribution of Attorneys' Fees*

One sign that class counsel pursued their own self-interests over those of the class is if class counsel receives a disproportionate distribution of the common settlement fund. *See id.* at 1023. For example, in *Briseño*, the court found that class counsel's receipt of $5.85 million of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

the $8 million gross settlement fund raised red flags, particularly because the class received less than $1 million. *See id.* at 1020.

Here, Class Counsel seek one-third of the common fund, or roughly $1,166,666, in attorneys' fees. *See Fees Mot.* 1:2–3. Indeed, the requested fee amount departs from the federal benchmark of 25% of the Settlement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). But not only is this figure much lower than the percentage sought in *Briseño*, it represents a purported lodestar multiplier of slightly less than 2.0, *see Fees Mot.* 14:23–25, which is typical in common fund cases in this Circuit, *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (finding multipliers typically range from 1.5 to 3.0). Further, the Class is expected to receive approximately 60% of the gross settlement amount. *See Fees Mot.* 1:10; *see also FA Mot.* 24:3–8. The requested fee amount is thus not disproportionate to the Class's recovery. *Accord Martinez v. Helzberg's Diamond Shop*, No. ED CV 20-1085 PSG (SHKx), 2021 WL 9181893, at *6 (C.D. Cal. Sept. 24, 2021) (holding that where class was expected to receive more than 60% of the gross settlement amount, a request for 33% in attorneys' fees was not disproportionate and weighed in favor of approval). As such, this factor does not indicate collusion or inappropriate self-interest.

> b.    *Presence of a Reverter Clause*

A reverter clause is one that "returns unawarded fees to the defendant, rather than the class." *Briseño*, 998 F.3d at 1023. Here, "[t]he Settlement is non-reversionary." *Settlement* ¶ 43. The absence of a reverter clause therefore suggests that the negotiations were free from collusion.

> c.    *Presence of a "Clear Sailing Arrangement"*

A settlement agreement contains a "clear sailing arrangement" when "the defendant agrees not to challenge a request for an agreed-upon attorney's fee." *Briseño*, 998 F.3d at 1023. But the mere presence of a clear sailing arrangement is not "an independent basis for withholding settlement approval." *Id.* at 1027. Instead, such arrangements are material only if there is evidence of at least one of the other two *Briseño* factors—reverters and unreasonably high attorneys' fees. *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021) ("[A] clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." (citation omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

Although the Settlement contains a clear sailing arrangement, *see Settlement* ¶ 5, any potential for collusion that could come from the arrangement is offset because neither the attorneys' fees are excessively high nor does the Settlement contain a "reverter" clause. Rather, "any funds not awarded to Class Counsel will go to the Class Members." *FA Mot.* 24:13–15. This factor thus only weakly indicates collusion or inappropriate self-interest. *See Briseño*, 998 F.3d at 1027.

     *d.*  Briseño *Conclusion*

After considering each of the *Briseño* factors, the Court finds that the Settlement Agreement, on balance, was not collusive or based on inappropriate self-interest.

  B.  <u>Analysis of Collective Settlement</u>

    *i.*  *Legal Standard*

A district court is not bound to exercise the same oversight over the settlement of a collective action as it must exercise over a class action under Rule 23(e). Whereas a court's role in supervising the settlement of a class action "protects unnamed class members from unjust or unfair settlements affecting their rights," *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted), members of an FLSA collective action have opted in affirmatively. A court's involvement in the management of an FLSA action thus "has less to do with the due process rights" of those to be bound by a settlement "and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in managing collective actions in an orderly fashion." *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (citation omitted).

A court may not approve an FLSA settlement without determining that it is "a fair and reasonable resolution of a bona fide dispute." *Lewis v. Vision Value, LLC*, No. 1:11-cv-01055-LJO-BAM, 2012 WL 2930867, at *2 (E.D. Cal. July 18, 2012). "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016). In other words, there must be "some doubt" that the plaintiff would succeed on the merits. *See id.* Courts will not approve a settlement "[i]f there is no question that the FLSA entitles plaintiffs to the compensation they seek." *See id.* But assuming there is a bona fide dispute, courts must then consider the following factors to determine whether an FLSA settlement is "fair and reasonable":

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

(1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Id.* at 1173.

       *ii.*    *Discussion*

The Court, in its preliminary approval order, analyzed the Collective Settlement and found that it resolves a "bona fide dispute" and that it was "fair and reasonable." *See Prelim. Approval Order* at 14–16. As previously discussed, Plaintiffs have a strong liability case against Defendant. *See id.* But they are cognizant that factual and legal issues could significantly impact the Collective's recovery. *See FA Mot.* 14:10–17:3.

The Collective Settlement is also fair and reasonable under the above-mentioned factors. First, the Court previously found that Collective Members will receive a payment of significant value given the bona fide factual and legal disputes and risks of ongoing litigation. *See Prelim. Approval Order* at 15–16. Second, the parties had a clear view of the merits of the case given that they engaged in extensive discovery before settling. *See Turner v. C.R. England, Inc.*, EDCV 14-2208 PSG (SPx), 2016 WL 11758481, at *4 (C.D. Cal. Apr. 18, 2016). Further, the presence of the mediator during settlement negotiations supports the conclusion that the Settlement was not a product of fraud or collusion. *See FA Mot.* 13:8–13. Finally, the Settlement provides for a narrow release of only the FLSA claims for those Collective Members that have opted-in. *See Settlement* ¶ 15; *FA Mot.* 11:19–27.

The Court therefore finds that the Collective Settlement is fair and reasonable.

C.    <u>Final Approval Conclusion</u>

Having concluded that the *Hanlon* factors favor final approval, that the Settlement Agreement is appropriate under *Briseño*, and that the Settlement constitutes a fair and reasonable resolution of "bona fide dispute," the Court **GRANTS** Plaintiffs' motion and finally approves the Settlement. Benefits under the Settlement shall therefore be made immediately available to Class and Collective Members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

III.     Attorneys' Fees, Costs, and Enhancement Awards

Plaintiffs additionally move for (1) $1,166,666.67 in attorneys' fees for Class Counsel, (2) $20,000 in expenses, and (3) enhancement awards of $15,000 to each of the four named Plaintiffs.  *See Fees Mot.* 4:23–5:1.  The Court addresses each of these requests in turn.

A.     Attorneys' Fees

i.     *Legal Standard*

Federal Rule of Civil Procedure 23(h) governs awards of attorneys' fees in class action cases and provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs.  *See* Fed. R. Civ. Pro. 23(h).  The Court "must carefully assess" the reasonableness of the fee award.  *See Staton*, 327 F.3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-6750 MMM (DTB), 2010 WL 9499073, at *3–5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement). "The mere fact that the defendant agrees to pay the fees 'does not detract from the need to carefully scrutinize the fee award.'"  *Zubia v. Shamrock Foods Co.*, No. CV 16– 3128 AB (AGRx), 2017 WL 10541431, at *5 (C.D. Cal. Dec. 21, 2017).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the lodestar method or the percentage-of-recovery method.  *See Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021)*.* "Though courts have discretion to choose which calculation method they use, their discretion must be exercised as to achieve a reasonable result," and the Ninth Circuit recommends "cross-checking their calculations against a second method."  *In re Bluetooth Headset Prods. Liab.*, 654 F.3d at 942.

The Court first analyzes the reasonableness of the request under the percentage-of-recovery method and then cross-checks it against the lodestar method.

ii.     *Percentage-of-Recovery Method*

Under the percentage-of-recovery method, courts typically use 25 percent of the fund as a benchmark for a reasonable fee award.  *See In re Bluetooth Headset Prods. Liab.*, 654 F.3d at 942.  The percentage can range, however, and courts have awarded more or less than 25 percent

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

of the fund in attorneys' fees as they deemed appropriate. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that courts generally award between 20 and 30 percent of the common fund in attorneys' fees). When assessing fee awards' reasonableness under the percentage-of-recovery theory, courts consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (citing *Vizcaino*, 290 F.3d at 1048–50).

Here, Plaintiffs ask the Court to approve the fee award of one-third the common fund, or $1,166,666.67, exclusive of costs. *See generally Fees Mot.* Because Plaintiffs ask the Court to depart from the "benchmark" of 25 percent, the Court must evaluate each of the five factors set out in *Vizcaino. See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

### a.    *Results Achieved*

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046. In this case, Class Counsel recovered more than 52% of Defendant's overall estimated maximum principal damage exposure. *See Fees Mot.* 6:24–25, 9:23–25. Given the significant results achieved on behalf of Class and Collective Members, this factor supports the requested fee award.

### b.    *Risk of Litigation*

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048 (discussing that "[r]isk is a relevant circumstance" in determining an attorney fee award in a common fund case). The Court recognizes that Class Counsel would have faced substantial obstacles were it to have to continue litigating this matter. *See Fees Mot.* 7:17–26. As the Court already noted, this matter presented several legal and factual disputes, which Class Counsel would have had to overcome both here and in the state court § 222 case. *See id.* The Court thus finds that the risks associated with this litigation weigh in favor of an upward departure from the federal benchmark.

### c.    *Skills Required and Quality of Work*

The Court also considers the skills required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047. Here,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

Class Counsel engaged in motion practice, substantial discovery, and mediation, which also weighs in favor of approving the requested fees. *See Fees Mot.* 5:1–7.

### d.    *Contingent Nature and Plaintiffs' Financial Burden*

Class Counsel have spent over three years on this litigation, which they took on a wholly contingent basis. *See Fees Mot.* 17:14–15. Since they have faced the risk of walking away with nothing, the Court finds that this factor supports an upward departure.

### e.    *Awards Made in Similar Cases*

Class Counsel also establish that the requested award is comparable to awards approved by other California district courts in similar cases. *See id.* 9:13–22 ("California district courts usually award attorneys' fees in the range of 30-40% in wage and hour class actions that result in the recovery of a common fund under $10 million (citing *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-cv-01321-TLN-CKD, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015))); *see also Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-4149 MMM (SH), 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (awarding 34% of the common fund in attorneys' fees in a wage and hour class action settlement); *Knight v. Red Door Salons, Inc.*, No. 08-1520 SC, 2009 WL 248367, at *17 (N.D. Cal. Feb. 2, 2009) ("nearly all common fund awards range around 30%"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (citing to wage and hour cases where courts approved awards ranging from 30% to 33%); *Singer v. Beckton Dickinson and Co.*, No. 08-CV-821 IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving an attorneys' fee award of 33.33%); *Garcia v. Gordon Trucking, Inc.*, No. CV 10-0324 AWI (SKO), 2012 WL 5364575, at *8, *10 (E.D. Cal. Oct. 31, 2012) (approving fees in the amount of 33% of the common fund). These similar fee awards in other wage and hour class action cases also support the requested fee award.

### f.    *Conclusion*

The Court finds that, in light of all the *Vizcaino* factors, Class Counsel's request for an upward departure from the federal benchmark is reasonable.

### iii.    *Lodestar Method Cross-Check*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

To calculate the "lodestar," the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).

Class Counsel assert that the current lodestar is $600,195.50 based on a total of 1,314.6 hours spent on this case. *See Myers Decl.*, ¶ 14, Ex. A (The Myers Law Group, APC Lodestar). In support of these figures, Class Counsel submit timekeeping statements from the attorneys, paralegals, and certified law student that worked on the case. *See id.* These statements are summarized as follows:

| Name | Hours | Rate | Amount |
|---|---|---|---|
| David P. Myers, Esq. | 92.8 | $850 | $78,880.00 |
| Robert M. Kitson, Esq. | 3.9 | $850 | $3,315.00 |
| Jason Hatcher, Esq. | 535 | $650 | $347,750.00 |
| Morgan Good, Esq. | 33.5 | $425 | $14,237.50 |
| Cassandra Castro, Esq. | 226 | $325 | $73,450.00 |
| **Attorney Subtotal:** | **891.2** | | **$517,632.50** |
| Yvonne Medina (Paralegal) | 177.7 | $195 | $34,651.50 |
| Cassandra Castro (Certified Law Student)[1] | 245.7 | $195 | $47, 911.50 |
| **Staff Subtotal:** | **423.4** | | **$82,563.00** |
| **Total Lodestar** | **1314.6** | **N/A** | **$600,195.50** |

---

[1] Cassandra Castro worked as a certified law student under the supervision of Jason Hatcher from May 27, 2019, to July 31, 2019, and from May 18, 2020, to December 15, 2020. Effective December 16, 2020, Ms. Castro was admitted to practice as a provisionally licensed lawyer under David Myers. *Myers Decl*. ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

    *a.    Reasonable Rate*

When calculating the lodestar, the reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the prevailing market rates in the relevant community." (citation omitted)); *Viveros v. Donahue*, No. CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. Mar. 27, 2013) ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services."). The relevant community is the community in which the court sits. *See Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). If an applicant fails to meet its burden, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community. *See, e.g.*, *Viveros*, 2013 WL 1224848, at *2; *Ashendorf & Assocs. v. SMI-Hyundai Corp.*, No. CV 11-02398 ODW (PLAx), 2011 WL 3021533, at *3 (C.D. Cal. July 21, 2011); *Bademyan v. Receivable Mgmt. Servs. Corp.*, No. CV 08-00519 MMM (RZx), 2009 WL 605789, at *5 (C.D. Cal. Mar. 9, 2009).

The Court turns to the *2021 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report") as a useful guidepost to assess the reasonableness of these hourly rates in the Central District. *See Eksouzian v. Albanese*, No. CV 13-728 PSG (AJWx), 2015 WL 12765585, at *4–5 (C.D. Cal. Oct. 23, 2015). The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies. *See Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302 DSF JCG, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014). Courts have found that the Real Rate Report is "a much better reflection of true market rates than self-reported rates in all practice areas." *Id.*; *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).

The Real Rate Report provides that, in Los Angeles, partners litigating employment-related matters, such as wage and hour claims, have hourly rates ranging from $500 to $855, and associates have hourly rates ranging from $350 to $580. *See* Real Rate Report at 118. Here, Class Counsel charged hourly rates of $325 to $850. *See Myers Decl.* ¶ 10. As Class Counsel explain, the Myers Law Group APC, does not have partners or partnership tracks. *See id.* ¶ 13. Because of the lack of titles, the Court assesses the reasonableness of the fee request from the varying range of experience. The declarations indicate that the hourly rate requested is commensurate with each attorney's experience and his or her role in the litigated matter. *See id.* Accordingly, the Court accepts the following rates as within the reasonable rate charged in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

relevant community: (1) David Myer's rate of $850[2]; (2) Robert Kitson's rate of $850[3]; (3) Jason Hatcher's rate of $650[4]; (4) Morgan Good's rate of $425[5]; and (5) Cassandra Castro's rate of $325[6].

Finally, Class Counsel charged hourly rates of $195 for a paralegal and certified law student. *See Myers Decl.* ¶ 8, Ex. A. Plaintiffs do not adequately detail the prevailing rate for paralegals or law clerks to support these rates, and the Real Rate Report does not provide information for paralegals or support staff. However, courts in this District have approved similar rates for litigation support staff. *See, e.g., SAS v. Sawabeh Info. Servs. Co.*, No. CV 11- 4147 MMM MANx, 2015 WL 12763541, at *22–23 (C.D. Cal. June 22, 2015) (approving hourly rate of $150 to $275 for litigation support staff). Therefore, the Court approves the following rates as within the range charged in the relevant community: (1) Yvonne Medina's rate of $195; and (2) Cassandra Castro's rate of $195.

### b.    *Reasonable Hours*

An attorneys' fee award should include compensation for all hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).

Here, Class Counsel have spent 1,314.6 hours on this case over the course of three years. *Myers Decl.* ¶14, Ex. A. Before reaching a Settlement Agreement, Class Counsel investigated the facts surrounding the underpaid wage violations, drafted, finalized, and amended complaints and various motions, conducted formal discovery, prepared for and attended mediation, participated in post-mediation conferences, and negotiated and drafted the initial settlement agreement and amended settlement agreement. *See FA Mot.* 4:27–5:19. Class Counsel expended significant effort to provide the Class and Collective quick recovery while avoiding duplicative efforts. *See, e.g., FA Mot.* 13:9–23.

---

[2] Founding Partner of the Myers Group. *See Myers Decl.* ¶ 13.

[3] Chair of Complex Litigation and attorney with over 25 years of experience. *See id.* ¶ 5.

[4] Attorney with 10 years of experience litigating wage and hour class actions. *See Hatcher Decl.* ¶ 2.

[5] Attorney with over six years of experience in civil litigation matters. *See Myers Decl.* ¶ 7.

[6] Provisionally Licensed Lawyer under David Myers as of December 16, 2020. *See id.* ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

The Court ultimately finds that the time expended by Class Counsel was reasonable.

*c.    Reasonableness of Lodestar*

Based on the foregoing, the resulting lodestar amount is $600,195.50.  Comparing the lodestar against the requested fee of $1,166,666.67 results in a multiplier of roughly 1.94.

"[A] 'bare majority' of multipliers in common fund cases fall in the 1.5 to 3.0 range." *See Contreras v. Armstrong Flooring, Inc.*, No. CV 20-3087 PSG (SKx), 2021 WL 4352299, at *12 (C.D. Cal. July 6, 2021) (citing *Vizcaino*, 290 F.3d at 1051 n.6).  Class Counsel's request for a multiplier of 1.94 of its lodestar not only falls within this range of multiplier typically approved in common fund cases, it is also supported by the significant recovery achieved.  *Accord Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) (indicating that "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation").  The Court therefore finds that the requested fee award is reasonable when cross-checked against the lodestar method.

*iv.    Conclusion*

Given that Class Counsel's requested attorneys' fee award is reasonable under both the percentage-of-recovery and lodestar methods, the Court **GRANTS** Class Counsel's request for $1,166,666.67 in attorneys' fees.

B.    <u>Litigation Costs</u>

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048.  Here, Class Counsel request reimbursement of expenses incurred in the amount of $20,000.  *See Myers Decl.* ¶ 16, Ex. B.  The Court has reviewed the accounting records and is satisfied that the costs amount to a reasonable expenditure for the three years that this litigation has been pending.  The Court therefore **GRANTS** the request for $20,000 in costs.

C.    <u>Enhancement Awards</u>

"Incentive awards are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  When assessing requests for incentive awards, courts consider five principal factors:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken,* 901 F. Supp. at 299 (N.D. Cal. 1995).

Further, while "[t]he range of acceptable enhancement payments is discretionary, . . . courts have determined that a $5,000 payment is presumptively reasonable." *Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *4 (C.D. Cal. Dec. 9, 2021) (citation omitted); *see also Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 WL 1927342, at *8 (N.D. Cal. Apr. 28, 2015) ("Many courts in the Ninth Circuit have also held that $5,000 incentive award is presumptively reasonable." (citation omitted)).

Here, Plaintiffs each request an enhancement of $15,000, or $60,000 total for all four Class Representatives. *See Fee Mot.* 18:27–19:1. The individual amount each Class Representative seeks is only slightly more than the average Class Member award of $12,195 and 0.4% of the gross settlement amount—cumulatively, 1.7% of the gross settlement amount. This proportion places the requested awards within the range of approval. *See, e.g.*, *Dawson v. Hitco Carbon Composites, Inc.*, No. CV 16-7337 PSG (FFMx), 2019 WL 7842550, at *10 (C.D. Cal. Nov. 25, 2019) (finding an enhancement award of 5 times the average class award reasonable); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV 13-5693 PSG (GJSx), 2017 WL 4685536, at *11 (C.D. Cal. May 8, 2017) (approving an incentive award, in part, because it reflected only 0.2% of the total settlement).

Moreover, Plaintiffs spent dozens of hours performing work related to the case. Specifically, each Class Representative assisted Class Counsel by, among other things, (1) sitting for depositions, (2) attending mediations, (3) responding to written discovery requests, (4) fielding calls from Class and Collective Members, and (5) preparing for trial. *See Fee Mot.* 20:24–21:2; *see also Declaration of Jose Alvarez*, Dkt. # 97–4, ¶ 6; *Declaration of Kareem Davis,* Dkt. # 97–5, ¶ 6; *Declaration of Ethel Herrera,* Dkt. # 97-6, ¶ 6; *Declaration of Chad Shoemaker*, Dkt. # 97-7, ¶ 6.

The Court agrees that the requested enhancement awards are appropriate here for the reasons described above. The Court thus **GRANTS** Plaintiffs' request for enhancement awards of $15,000 per Class Representative, for a total of $60,000.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8044 PSG (JCx) | Date | March 20, 2023 |
|---|---|---|---|
| Title | Jose Alvarez, et al. v. City of Oxnard, et al. | | |

IV.   <u>Conclusion</u>

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion for final approval of the class and collective action settlement and **GRANTS** Plaintiffs' motion for attorneys' fees, costs, and class representative service awards.  It is **HEREBY ORDERED AS FOLLOWS**:

- The Court approves settlement of the action between Plaintiffs and Defendant, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate.  The parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement.

- Class Counsel are awarded $1,166,666.67 in attorneys' fees and $20,000 in costs.

- Class Representatives are each awarded a $15,000 enhancement award, for a total of $60,000.  The Court finds that these amounts are warranted and reasonable for the reasons stated in this order.

Without affecting the finality of this judgment in any way, this Court hereby retains exclusive jurisdiction over Defendant and the Class and Collective Members for all matters relating to the litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this order.

This order closes the case.

**IT IS SO ORDERED.**